UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| CHRISTINA MILES, | ) | |
| | ) | |
| Plaintiff, | ) | 1:23-CV-97 |
| | ) | |
| vs. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Claimant's claims for Disability Insurance Benefits and Supplemental Security Income were denied administratively by Defendant Commissioner following a hearing before an Administrative Law Judge ("ALJ"). This is an action for judicial review of the Commissioner's administrative denial of benefits. Claimant has filed a Memorandum in Support of her Complaint [Doc. 12], the Commissioner filed a Motion to Remand [Doc. 14], and Claimant filed a Response in opposition to the Commissioner's Motion [Doc. 15]. The Court held a hearing to permit counsel to make arguments addressing the Commissioner's Motion on November 1, 2023. For reasons set forth below, the Court **RECOMMENDS** that Commissioner's Motion to Remand [Doc. 14] be **GRANTED**.

I. PROCEDURAL AND FACTUAL OVERVIEW

Christina Miles ("Claimant") filed for Social Security disability benefits and Supplemental Security Income on September 28, 2020, alleging a disability onset date of March 30, 2019. (Tr. 18). The claims were denied initially and on reconsideration. *Id.* A telephonic hearing was held on

January 10, 2022, before Administrative Law Judge ("ALJ") Wesley Kliner, who subsequently issued an unfavorable decision. (Tr. 28, 33). The ALJ found Claimant to have severe impairments of "left knee meniscus tear, status post arthroscopic surgery; obesity; bipolar disorder, mixed; generalized anxiety disorder; borderline personality disorder; and stimulant use disorder in early remission." (Tr. 20-21). He further rendered the following RFC formulation:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she would be limited to standing and walking for no more than about thirty minutes at a time, could frequently balance, occasionally stoop, crouch, and climb ramps or stairs, no climbing ladders, ropes, or scaffolds, kneeling, or crawling; understand, remember, and perform simple, routine work tasks and make decisions requiring a GED reasoning level of 2 or less; in addition to normal breaks would be off task up to 5 to 8% of an eight-hour workday due to brief, momentary lapses in her concentration, persistence, and pace due to psychological symptoms; she can have occasional non-confrontational interaction with coworkers and supervisors, no interaction with the public; she can adapt to infrequent changes in her work tasks, and would be absent one day per month for two months out of every three months, for a total of no more than 9 days missed per year.

(Tr. 23).

He ultimately determined that Claimant was not disabled. (Tr. 33). Claimant subsequently requested Appeals Council review, but the request was denied on January 9, 2023. (Tr. 5). As a result, the ALJ's decision ("the decision") became the Commissioner's final decision. *Id*.

On appeal, Claimant filed a memorandum in support of her Complaint against the Social Security Administration. [Doc. 12]. Therein, she states that she accepts the factual findings of the ALJ but disagrees with the legal conclusion he drew from those facts. *Id.* at 4-5. More specially, she claims the ALJ erred in concluding that she could even complete the probationary period required for new employment, much less that she retained the ability to perform work. *Id.* She points to the testimony of a Vocational Expert ("VE"), who testified at the ALJ hearing that with the types of jobs Claimant could perform with her RFC, there will generally be a 90-day probationary period at the start of the employment where no absences are allowed. *Id.* at 5-6. Claimant points out that although the ALJ found that she would be absent two days in a 90-day

period, he went on to find that Claimant could perform work in the national economy and was not disabled. *Id.* at 5. Because she accepts the factual findings of the ALJ, Claimant asks the Court to remand her case for an award of benefits because she contends that the ALJ's factual findings clearly demonstrate that she could not successfully complete a probationary period for new employment which renders her disabled and leaves no ambiguity in the record to be resolved.

In response, the Commissioner filed a Motion for Remand [Doc. 14] and a supporting memorandum [Doc. 14-1]. Therein, the Commissioner states that she agrees remand is necessary in this case but contends that an award of benefits is not justified because all essential factual issues have not been resolved. [Doc. 14-1, p. 2]. In her motion, the Commissioner does not articulate which specific issues need to be resolved or how she believes the ALJ erred. However, she states that if the case is remanded, "the Appeals Council will issue instructions to re-evaluate Plaintiff's residual functional capacity (RFC), linking the assessed limitations to specific evidence of record; obtain supplemental vocational evidence, if needed, containing the limitations found in the RFC; take any other necessary action to complete the record; and issue a new decision." *Id.* at 1. During the hearing before the undersigned, counsel for the Commissioner initially argued only that the ALJ erred in failing to ask the VE about non-confrontational interactions with co-workers and supervisors. Because Claimant had alleged that the ALJ reached an incorrect conclusion regarding Claimant's ability to satisfactorily complete a probationary period, the Court inquired of Commissioner's counsel about the Commissioner's position on that issue. Counsel responded that the VE's testimony as to the probationary period issue was ambiguous.

Claimant filed a Response [Doc. 15] in opposition to the motion for remand. She takes issue with the Commissioner's statement that her case should be remanded so her RFC can be re-evaluated, and further vocational evidence can be obtained. *Id.* at 1-2. Claimant notes that the Commissioner did not point to any evidence in the record demonstrating ambiguity regarding her inability to complete a probationary period nor dispute her legal argument regarding how a

claimant's ability to complete a probationary period should be addressed, and asserts that, as a result, the Commissioner's argument for remand should be deemed waived. *Id.* at 2-4. Finally, Claimant asserts that justice requires a remand for benefits given the long processing times for SSA claims and the number of claims that would be considered before hers. *Id.* at 5.

In considering the Commissioner's request for remand, the Court reviewed evidence contained in the transcript filed in this matter in conjunction with addressing the arguments of the parties presented in written filings and during the hearing before the undersigned. Specifically, the Court has reviewed and considered Claimant's medical records and will address them as necessary to fully analyze the issues raised by the parties. (Tr. Ex. 1F-17F). The Court notes that the records contained in Exhibits 6F, 7F, and 9F-17F were generated on or after the alleged onset date and Exhibit 8F contains records from before and after the alleged onset date. Additionally, the Court has reviewed and considered the opinions provided by state agency medical consultants on initial consideration and reconsideration of Claimant's applications for benefits. (Tr. Ex. 3A-6A). Lastly, the Court has reviewed and considered the hearing testimony and other filings made by Claimant regarding her condition. (Tr. 35-82; Tr. Ex. 1E-10E). Having done so, the Court will now address the error alleged by Claimant in the context of the parties' arguments and applicable law.

II.     **LEGAL ANALYSIS**

Claimant takes issue with the ALJ's treatment of VE testimony and asks the Court to remand her case for an award of benefits because proof of her disability is strong, and all essential factual issues have been resolved. Remand for further evaluation under sentence four of 42 U.S.C. § 405(g) is proper when further evaluation of the evidence is required. *See Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 644 (6th Cir. 2013). However, a court may remand for an award of benefits when "essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176

(6th Cir. 1994). The Sixth Circuit has further advised that "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id.* (citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)).

The Court begins its analysis with a review of the medical evidence of record and finds that there is strong, but not overwhelming, evidence of disability in this case and that essential factual issues are left to be resolved, making remand for an award of benefits inappropriate. In analyzing these medical records, the Court will focus primarily on Claimant's mental health conditions. While Claimant's records reveal that she does have physical health conditions, which were acknowledged by the ALJ, the main impairments alleged are mental health conditions. Without producing an exhaustive list of Claimant's mental health records, the Court will outline some of the relevant evidence of record.

The record reveals that Claimant has long suffered from bipolar disorder, borderline personality disorder, anxiety, hallucinations (both visual and auditory), and suicidal ideation. Claimant reported suffering from depression and experiencing hallucinations since she was a teenager. [Tr. Ex. 11F, p. 714-15; 14F, p. 819]. At 16, she first attempted suicide and reported cutting herself. [Tr. Ex. 11F, p. 715]. The Court observes that these incidents occurred long before Claimant applied for disability benefits. She has also attempted suicide since then and reported experiencing suicidal ideation at times. *Id.*; *see also* [Tr. Ex. 2F, p. 385; 3F, p. 409; 12F, p. 722] (documenting suicide attempts and suicidal ideation from 2016-2021). Claimant reported having a "chaotic childhood" wherein she experienced physical abuse. [Tr. Ex. 11F, p. 714]. She later experienced a physically and emotionally abusive relationship with the father of her child. *Id.*

To address these mental health challenges, Claimant has taken medication and attended therapy with varying results. Claimant has continued to experience hallucinations but reported that medication helped limit them. [Tr. Ex. 12F, p. 722]. The ALJ noted that at times Claimant's medications were helping her—specifically, improving her irritability—but there is also evidence in the record that certain mental health medications have not helped her. *Compare* [Tr. Ex. 6F, p. 513, 14F, p. 834, 840] (Claimant's mood was much better after taking Latuda and trazodone) *with* [Tr. Ex. 3F, p. 393] (Lexapro and sertraline did not work). In addition to taking medication, Claimant has gone to therapy since moving to Tennessee. [Tr. Ex. 11F, p. 715]; *see also* [Tr. Ex. 6F, 12F, 14F, 15F] (mental health treatment records). In 2015, while living in Wisconsin, Claimant underwent inpatient psychiatric treatment as well. [Tr. Ex. 11F, p. 715]. Throughout her treatment in therapy, Claimant experienced slight progressions in her mental health but continued to suffer from severe depression and impulsive behavior. *See* [Tr. Ex. 5F].

Despite these challenges, Claimant testified that she wants to work and has tried to maintain employment but has been unable to do so. (Tr. 55-58). She stated that it is hard for her to be around other people. (Tr. 54); *see also* [Tr. Ex. 4E] (explaining in a function report that Claimant gets anxious around people and has outbursts). She has consistently reported experiencing "meltdowns" and "breakdowns" and has been noted to have abnormal mental status at appointments, further demonstrating her inability to interact appropriately with the public. [Tr. Ex. 4F, p. 473; 6F, p. 506, 511, 513; 11F, p. 718].

The record demonstrates that Claimant suffers from long-lasting and severe mental health impairments, but there remains some question as to how much work she would be expected to miss due to her mental health conditions and the impact of that absenteeism on her RFC and ability to sustain employment. The ALJ limited Claimant's RFC to being absent from work one day per

month for two out of three months, for a total of nine absences per year. (Tr. 23). However, Claimant testified that her depression renders her unable to function for at least three to four days at a time, and up to two weeks, every two to three months. (Tr. 64). If Claimant's testimony regarding these periods of depression is accepted, she would be unable to work during those periods and would be absent from work a minimum of twelve days and up to sixty days per year. Given the above discussion of Claimant's mental health history, the record reveals that the absenteeism Claimant expects for herself may be at least somewhat accurate. However, Claimant's testimony is vastly different from the limitation included in her RFC, and the ALJ did not adequately explain how the assigned expected absenteeism rate squares with Claimant's testimony or the overall record. On remand, the ALJ should further consider Claimant's expected absenteeism. Resolving this issue is especially pertinent given that the heart of the disagreement in this matter is whether failure to complete a probationary period due to absences would preclude a claimant from substantial gainful activity.

Claimant contends that she agrees with the ALJ's factual findings but that the probationary period issue is a legal question which the ALJ failed to adequately address. In her memorandum, Claimant cites to a Second Circuit opinion which found, "The ability to complete a probationary period is thus tantamount to the ability to keep a job, and as multiple circuits have recognized, the ability to keep a job is a necessary prerequisite to the ability to engage in substantial gainful activity." *Sczepanski v. Saul*, 946 F.3d 152, 159 (2d Cir. 2020). She also cites to two district court opinions from within the Sixth Circuit which reached the same conclusion: *McLaughlin v. Comm'r of Soc. Sec.*, No. 3:17-cv-424, 2019 WL 125761 (S.D. Ohio Jan. 8, 2019) and *Otto v. Saul*, No. 3:20-cv-00060-TPK (S.D. Ohio Mar. 24, 2021). In those cases, the Southern District of Ohio remanded the claims for benefits and found that the claimants were unable to complete

7
Case 1:23-cv-00097-CEA-CRW   Document 19   Filed 12/14/23   Page 7 of 11   PageID #: 999

probationary periods given the restrictions in their RFCs. The Courts found that an inability to complete a probationary period would render a claimant unable to perform the job. *Otto*, No. 3:20-cv-00060-TPK, at *6; *McLauglin*, 2019 WL 125761, at *3. The *McLaughlin* Court further stated that there was no ambiguity in the VE's testimony which would justify remand for further evaluation. *McLauglin*, 2019 WL 125761, at *4.

While these cases are instructive, they are not binding on this Court, and the VE's testimony in this matter does not clearly indicate that Claimant would be unable to complete a probationary period. Furthermore, the VE's testimony is less than crystal clear regarding exactly what types of absences, if any, that an employer would tolerate during such a period. That is in large part due to the specific questions posed to the VE.

The relevant portion of the VE's testimony begins with the ALJ's proposed hypotheticals and the VE's listing of jobs that the hypothetical individual could perform. (Tr. 70-75). Claimant's attorney began asking the VE about whether any of the listed occupations would allow for paid time off ("PTO") for the employee. (Tr. 77-78). After some questioning by Claimant's attorney and the ALJ, the VE testified that the types of employees described in the hypotheticals typically work for a 90-day probationary period in which they accrue PTO. (Tr. 78). The ALJ then asked whether an employee could "have any absences during the 90 days," to which the VE responded, "Generally, not." (Tr. 79). The ALJ then asked the following:

> [I]f they had no accrued paid time off, are employers understanding that somebody may have a scheduled doctor's appointment, so they'll let it go as long as they have prior notice and they take them off the schedule? That's the first question. If they have paid time off, can they schedule it ahead of time without any problems?
>
> (Tr. 79).

This line of questioning appears to be asking two different things. First, the ALJ is asking whether an employee could take time off during a probationary period for a doctor's appointment.

8

Even though the VE had previously testified that employees generally could not take time off during this time, common sense would provide that some employers would be understanding of an employee taking time off for a medical appointment, even if that time off was not paid. Second, the ALJ is asking whether employees could take time off after the probationary period when they have accrued PTO. Claimant's attorney during the ALJ hearing stated that the ALJ had fairly represented his inquiry of the VE, but the attorney then went on to say, "Just period, like how many days a year after that 90 days do these types of positions typically get off of work…" (Tr. 79). This question appears to be reiterating the ALJ's second inquiry above but omits the question about whether any absences would be allowed during the initial probationary period. The VE responded with the following:

> Well, I think number one, it depends on the employer, and I think if somebody has a doctor's appointment, you know, might be understandable. People have to go to the doctor and so on and so forth. So, it's possible. I don't think somebody's getting fired—would get fired for having to have a doctor's appointment. I don't think the employer is very happy about it. They're not going to let them off if they're in a probationary period or usually unskilled work with no vacation time or sick time. They're not going to just let them off and pay them, usually. But I certainly wouldn't say that they couldn't work.

(Tr. 80).

With this statement, the VE does not say that she is responding to one or the other of the ALJ's two questions, but her testimony could be taken to indicate that an employee would not be fired for having to take time off during a probationary period to attend a doctor's appointment. At the same time, it could just as easily be interpreted to say that an employee would in fact be fired for taking time off, even without pay, to attend such an appointment prior to accruing PTO. During the hearing before the undersigned, Claimant's attorney argued that the quoted statement was referring to a period after the probationary period and that any ambiguity in the VE's testimony resulted from a discussion of time after an employee would have accrued PTO.

Claimant instead points to the hearing testimony where the ALJ asks, "Can they have any absences during the 90 days?" (referring to a probationary period), and the VE responds, "Generally, not." (Tr. 79). Claimant contends that this section clearly shows her inability to complete a probationary period. If the testimony was limited to that question and answer alone, the Court may have found that the testimony was clear on the issue of absences during probationary periods. However, when viewed in context, another interpretation of the VE's testimony is that employers are generally not happy about employees taking time off before accruing PTO but that some would allow time off for medical appointments. Considering that there may be multiple interpretations of the VE's testimony, the Court finds that the testimony is ambiguous as to whether an employee could survive a probationary period while needing time off for medical appointments or illness-related issues, a subject which was not addressed with the VE. Once this question is answered, the question becomes whether Claimant specifically would be able to survive a probationary period given the jobs available to her and her expected absenteeism. This is a factual question for the ALJ to decide, not the Court. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (noting that the Court "may not try the case de novo, nor resolve conflicts in evidence").

If the District Court adopts this Court's recommendation, the ALJ should address on remand how many days Claimant will be expected to miss from work due to medical appointments or illness-related issues. The ALJ should do so in consideration of Claimant's long and severe history of mental health issues and the overall record evidence such that it is clear how the ALJ arrived at his opinion as to Claimant's expected absenteeism. The ALJ should further address the question of whether Claimant would be able to survive a probationary period if she needed to miss the particular number of days he determines that she is expected to be absent.

## III. CONCLUSION

After a careful review of the record in this matter and for the reasons stated above, the Court **RECOMMENDS** that the Commissioner's Motion [Doc. 14] be **GRANTED** and that the case be **REMANDED** for further consideration as outlined herein., pursuant to 42 U.S.C. § 405(g).[1]

Respectfully submitted,

/s/Cynthia Richardson Wyrick
United States Magistrate Judge

---

[1] Objections to this Report and Recommendation must be filed within 14 days after service of this recommended disposition on the objecting party. 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Fed. R. Civ. P. 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).